UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re

STAR CREATIONS DEVELOPMENT, LLC     Case No. 6:11-bk-13562

Chapter 7

Debtor.
_____/

**WELLS FARGO BANK, N.A.'S**
**EMERGENCY MOTION TO LIFT AUTOMATIC STAY**

Plaintiff, WELLS FARGO BANK, N.A, ("Wells Fargo" or "Lender") moves this Court enter an order lifting the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(2). In support Wells Fargo states:

1. Debtor, Star Creations Development, LLC, a Florida Limited Liability Company ("Debtor" or "Star Creations") filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on Tuesday, September 6, 2011.

2. Star Creations is a single real estate asset company which developed the Star Creations condominium project in Orlando, Florida.

**Wells Fargo's Collateral**

3. Lender is a national banking association, and is the successor by merger to Wachovia Bank, National Association ("Wachovia"). Attached to this Motion as **Exhibit "A"** is a copy of the official acknowledgment, authorization, and certification of the Office of the Comptroller of the Currency dated March 20, 2010, attesting to the consummation of the merger.

4. On or about April 23, 2004, Debtor executed and delivered to Wachovia a Promissory Note in the principal amount of $1,600,000.00 (the "Original Note"), a true and correct copy of which is attached hereto as **Exhibit "B"**. The extension of credit evidenced by the Original Note, as modified, renewed, increased and/or consolidated from time to time, is hereinafter called the "Loan".

5. On or about April 23, 2004, as a part of the same transaction evidenced by the Original Note, and as a requirement of Wachovia in making the Loan, Debtor executed and delivered to Wachovia a Mortgage, Assignment of Rents and Security Agreement (the "Mortgage"), securing payment of the Loan and pledging as security the real and personal property described therein, which was then owned by and in the possession of Debtor. The Mortgage, a true and complete copy of which is attached hereto as **Exhibit "C"**, was recorded in O.R. Book 7403 at page 1526 of the Public Records of Orange County, Florida (the "Records").

6. On or about April 23, 2004, as a part of the same transaction evidenced by the Original Note, and as a requirement of Wachovia in making the Loan, Guarantor executed and delivered to Wachovia an Unconditional Guaranty (the "Guaranty"), a true and complete copy of which is attached hereto as **Exhibit "D"**.

7. On or about December 22, 2005, Debtor and Wachovia entered into a future advance transaction with respect to the Loan, as evidenced by the following documents:

    a.     Future Advance Promissory Note executed by Debtor and payable to the order of Wachovia in the principal amount of $29,800,000.00.

    b.     Consolidated Renewal Promissory Note executed by Debtor and payable to the order of Wachovia in the principal amount of $31,400,000.00 (the "2005 Consolidation Note").

    c.     Modification of Mortgage and Notice of Future Advance executed by Debtor and Wachovia, recorded in O.R. Book 8385 at page 1512 of the Records, a true and complete copy of which is attached hereto as **Exhibit "E"** (the "First Mortgage Modification").

    d.     Collateral Assignment of Development Rights, Licenses, Contracts, Permits and Warranties executed by Debtor for the benefit of Wachovia, recorded in O.R. Book 8385 at page 1518 of the Records, a true and complete copy of which is attached hereto as **Exhibit "F"** (the "Collateral Assignment"). The Collateral Assignment pledged as security for the Loan the property rights described therein, which were then vested in Debtor.

8.     On or about April 18, 2006, Debtor and Wachovia entered into a Construction Loan Agreement relating to the Loan (the "Loan Agreement"), a true and complete copy of which is attached hereto as **Exhibit "G"**.

9.     On or about December 21, 2007, Debtor executed and delivered to Wachovia a Renewal Promissory Note in the principal amount of $20,356,635.41 (the

"2007 Renewal Note"), evidencing the renewal of the principal indebtedness that was previously evidenced by the 2005 Consolidation Note.

10. On or about December 22, 2005, Borrower and Wachovia entered into a future advance transaction with respect to the Loan, as evidenced by the following documents:

  a. Future Advance Promissory Note executed by Borrower and payable to the order of Wachovia in the principal amount of $29,800,000.00.

  b. Consolidated Renewal Promissory Note executed by Borrower and payable to the order of Wachovia in the principal amount of $31,400,000.00 (the "2005 Consolidation Note").

  c. Modification of Mortgage and Notice of Future Advance executed by Borrower and Wachovia, recorded in O.R. Book 8385 at page 1512 of the Records, a true and complete copy of which is attached hereto as **Exhibit "E"** (the "First Mortgage Modification").

  d. Collateral Assignment of Development Rights, Licenses, Contracts, Permits and Warranties executed by Borrower for the benefit of Wachovia, recorded in O.R. Book 8385 at page 1518 of the Records, a true and complete copy of which is attached hereto as **Exhibit "F"** (the "Collateral Assignment"). The Collateral Assignment pledged as security for the Loan the property rights described therein, which were then vested in Borrower.

11. On or about April 18, 2006, Borrower and Wachovia entered into a Construction Loan Agreement relating to the Loan (the "Loan Agreement"), a true and complete copy of which is attached hereto as **Exhibit "G"**.

12. On or about December 21, 2007, Borrower executed and delivered to Wachovia a Renewal Promissory Note in the principal amount of $20,356,635.41 (the "2007 Renewal Note"), evidencing the renewal of the principal indebtedness that was previously evidenced by the 2005 Consolidation Note.

13. On or about March 22, 2008:

    a. Borrower executed and delivered to Wachovia a Renewal Promissory Note in the principal amount of $16,778,054.98, a true and complete copy of which is attached hereto as **Exhibit "H"** (the "Note"), evidencing the renewal of the principal indebtedness that was previously evidenced by the 2007 Renewal Note; and

    b. Guarantor executed and delivered to Wachovia a Ratification of Guaranty, a true and complete copy of which is attached hereto as **Exhibit "I"**.

14. The Loan Agreement has been modified by operation of a First Amendment to Construction Loan Agreement dated as of April 15, 2008, a Second Amendment to Construction Loan Agreement dated as of April 17, 2008, and a Third Amendment to Construction Loan Agreement dated as of April 28, 2008, all executed by Borrower and Wachovia, true and complete copies of which are attached hereto as

**Composite Exhibit "J"**.  Hereinafter, the term "Loan Agreement" means and refers to the Loan Agreement as so modified.

15. On or about June 9, 2008, Borrower and Wachovia executed a Modification of Mortgage, recorded in O.R. Book 9711 at page 6969 of the Records, a true and complete copy of which is attached hereto as **Exhibit "K"** (the "Second Mortgage Modification").  Hereinafter, the term "Mortgage" means and refers to the Mortgage as modified by the First Mortgage Modification and the Second Mortgage Modification.

16. The security interests created by the Mortgage and the Collateral Assignment are perfected by virtue of (i) a UCC-1 Financing Statement filed on May 6, 2004, as Document No. 20040683846X in the Florida Secured Transaction Registry, as continued by a UCC-3 Financing Statement filed on January 28, 2009, as Document No. 200909929163 in the Florida Secured Transaction Registry, and (ii) a UCC-1 Financing Statement recorded in O.R. Book 7403 at page 1536 of the Records, as continued by a UCC-3 Financing Statement recorded in O.R. Book 9812 at page 9247 of the Records (collectively, the "Financing Statements"), true and complete copies of which are attached hereto as **Composite Exhibit "L"**.

Hereinafter, the Mortgage, the Collateral Assignment and the Financing Statements are sometimes collectively called the "Security Documents"; and the Security Documents, the Loan Agreement and the Note, together with all other documents executed by Borrower that further evidence or secure the Loan, are sometimes collectively called the "Loan Documents."

17. Lender owns and holds the Note, the Mortgage, the other Loan Documents, and the Guaranty. (Affidavit of Jason D. Brewer ¶ 7).

18. The real property described in the Mortgage includes all of the condominium units in Star Tower Condominium (collectively, the "Original Units"). Some of the Original Units have been released by Lender from the lien of the Mortgage. The Original Units that have not been so released are (i) encumbered by the Mortgage and the other Security Documents, and (ii) owned by and in the possession of Borrower. (Aff. of Jason D. Brewer ¶ 8).

19. The personal property described in the Security Documents is owned by Borrower, and is either in its possession or under its control. (Aff. of Jason D. Brewer ¶ 9).

20. The Note matured by its terms on December 22, 2008 (the "Maturity Date"). (Aff. of Jason D. Brewer ¶ 10).

21. Borrower defaulted under the Note, the Mortgage and the other Loan Documents, by failing to pay the indebtedness evidenced by the Note on the Maturity Date or at any time thereafter. (Aff. of Jason D. Brewer ¶ 10).

22. On or about December 3, 2010, Lender sent Borrower and Guarantor a letter demanding immediate payment of all outstanding indebtedness under the Loan Documents and Guaranty. A true and complete copy of the demand letter is attached hereto as **Exhibit "M"**. Despite such demand, neither Borrower nor Guarantor has made any payment to Lender on account of the Loan. (Aff. of Jason D. Brewer ¶ 11).

23. Borrower owes Lender:

a. $10,187,305.14 that is due on principal on the Note;

b. Accrued and unpaid interest as of September 6, 2011 in the amount of $1,073,032.01, per diem interest accruing at the rate of $1,036.21;

c. Protective Advances in the amount of $2,422,132.19;

d. Late Charges in the amount of $2,960.09;

e. Resulting in the total amount owed to Lender as of September 6, 2011 of $13,685,429.43. (Aff. of Jason D. Brewer ¶ 12).

24. Borrower also owes Lender all costs and expenses incurred or to be incurred by Lender in collecting the amounts due to it under the Note or the other Loan Documents, and in protecting its security in the property encumbered by the Security Documents, as well as other amounts that are or may become due under the terms of the Loan Documents. (Aff. of Jason D. Brewer ¶ 13).

25. By reason of the aforementioned defaults, Lender has been required to secure the services of the undersigned attorneys to endeavor to collect the sums due to it under the Loan Documents and to conduct these proceedings, and has agreed to pay said attorneys a reasonable fee for their services and to reimburse them for the costs they incur in connection therewith. (Aff. of Jason D. Brewer ¶ 14). All fees, costs and expenses so paid or incurred constitute additional indebtedness of Borrower and Guarantor to Lender, the payment of which is secured by the Mortgage and the other Security Documents.

### Foreclosure Action and Receiver Appointed

26. On December 10, 2010 Lender filed a foreclosure action in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida, bearing Case No. 2010-CA-02861 (the "Foreclosure Action"). (Aff. of Jason D. Brewer ¶ 15).

27. Lender also sought appointment of a receiver. (Aff. of Jason D. Brewer ¶ 16). After hearing evidence over two days, Judge Thomas B. Smith entered an Order appointing receiver on June 16, 2011. A copy of the Order Appointing Receiver is attached hereto as **Exhibit "N"**.

28. The receiver posted a bond, took possession of the Property and has been operating the property.

29. In appointing a receiver Judge Smith held:

> [i]t's clear to me that there is waste. As I said last time, the failure to pay taxes, allowing tax certificates to be issued, putting the lender in the position of having to redeem tax certificates in order to avoid a tax deed sale of the property is waste. Moreover, if the plaintiff [Wells Fargo] were to stop funding this property we would have waste that would include a cessation of property management, elevators wouldn't run, common areas wouldn't be maintained, owners and tenants would be denied basic and fundamental amenities that pertain to owning and living in this building. . . . I think that in this case the debtor may not feel like it's got a gun to the creditor's head, but in some ways I think it does. The debtor's out of money. It's broke. It freely admitted at the hearing in April [sic] that it had no money. It's admitted here today that it doesn't have money to fund its obligations. . . . This debtor hasn't performed its obligations since it broke its promise two to three years ago to pay this promissory note and retire this mortgage indebtedness. It continues to enjoy all of the benefits of owning this property, and the bank foots the bill because - -

presumably because it feels it has no other choice. You said that, well, they don't have to fund these deficits if they don't want to. Well, that's true, but who suffers if they don't - - not your client [Star Creations], your client's broke. They're [Wells Fargo] the ones who suffer. They suffer all the consequences I just outlined.

30. The Court further stated: "The case is overwhelmingly – the evidence overwhelmingly supports appointment of a receiver, and that's what I'm going to do."

**The Stay Should Be Lifted Under 362(d)(1)**

31. Section 362(d)(1) permits the automatic stay to be lifted "for cause, including the lack of adequate protection of an interest in property of such party in interest."

32. Wells Fargo is not, and cannot, be adequately protected by the Chapter 7 Trustee. The sole asset of the Debtor, a condominium with 48 unsold units, has had a negative cash flow of approximately $750,000 a year for each of the past two years. The only way the condominium has continued to operate is through Wells Fargo funding the average monthly operating deficit of over $60,000. The Trustee cannot adequately protect Wells Fargo. (Aff. of Jason D. Brewer ¶ 17).

33. In addition the lack of adequate protection, there are other "for cause" reasons to lift the stay. As set forth above, the property loses (on average) over $60,000 per month. If the stay is not lifted, the estate will be incurring over $60,000 in administrative expenses a month for property which is worth substantially less than the amount owed to Wells Fargo on the Note and Mortgage. There is no legitimate reason for the Trustee to retain Wells Fargo's collateral.

34. This Chapter 7 petition was filed on the afternoon of September 6, 2011, just prior to the scheduled depositions on September 78, 2011 of the three principals of Debtor - - Albert Kodsi, Steve Kodsi and Oded Cohen. Indeed, the first action by counsel for the Debtor in the state court action, after the Chapter 7 was filed, was to confirm that the depositions would not go forward because of the stay. Given that the only asset of the Debtor (other than potential preference or fraudulent conveyance claims) is 48 condominium units whose value is significantly less than the Wells Fargo's secured interest in those units, this Chapter 7 has no purpose other than to delay the scheduled depositions in Wells Fargo's foreclosure action and Well Fargo's ultimate foreclosure on its collateral. This constitutes cause and the stay should therefore be lifted.

### The Stay Should Be Lifted Under 362(d)(2)

35. Under Section 362(d)(2) of the Code, the stay should be lifted if "the debtor does not have an equity in such property" and the "property is not necessary to an effective reorganization." Since this is a Chapter 7 liquidation, Wells Fargo's collateral cannot be necessary for a reorganization. It is also undisputed that Debtor has no equity in the property.

36. At the recent state court receivership hearing, Debtor's principal Oded Cohen testified that he believed the remaining 48 units will sell for an average of $250,000 per unit (despite the fact that no unit has sold for over $200,000 in the past two years), generating $12 million in revenue. Wells Fargo is owed $13,685,429.43 as of September 6, 2011, with a per diem of $1,036.21. Cohen admitted, however, that it will take two years to sell the remaining units. Given any type of discount rate and present

value adjustments, the value of Wells Fargo's collateral is substantially less than the amounts owed to the Bank under the Note and Mortgage. Also significant is that the property is operating at a loss of $750,000 per year. Thus, even based on the Debtor's principal's projections, the Debtor has no equity.

37. Further, if necessary, Wells Fargo will present the testimony of an MAI appraiser who will testify that the subject property is worth substantially less than the amount owed to Wells Fargo under the Note and Mortgage.

## Conclusion

Wells Fargo prays this Court enter an order lifting the automatic stay under section 362(d)(1) and (d)(2), permitting Wells Fargo to complete the foreclosure, continue the appointment of the receiver during the foreclosure action, and to complete the Debtor's appeal of the receivership order.

Respectfully submitted,

/s/ John D. Goldsmith
JOHN D. GOLDSMITH
Florida Bar No. 0444278
jdgoldsmith@trenam.com
J. ALAN ASENDORF
Florida Bar No. 0585947
jaasendorf@trenam.com
BRIGID A. MERENDA
Florida Bar No. 0320500
bamerenda@trenam.com
TRENAM, KEMKER, SCHARF, BARKIN, FRYE, O'NEILL & MULLIS, P.A.
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida 33602
Telephone: (813) 223-7474
Fax: (813) 229-6553
Attorneys for Lender

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing WELLS FARGO BANK, N.A.'s, EMERGENCY MOTION TO LIFT AUTOMATIC STAY, has been provided through the Court's CM/ECF Noticing System to all CM/ECF Participants and **via U.S. Mail** on this 8th day of September, 2011 to: **Debtor, Star Creations Development, LLC,** 1030 North Orange Avenue, Winter Park, Florida 32789; **Norman L. Hull, Esquire,** Norman Linder Hull, P.A., 1133 Louisiana Avenue, Suite 116, Winter Park, Florida 32789; **Leigh R. Meininger,** Post Office Box 1946, Orlando, Florida 32802-1946, **U.S. Trustee, United States Trustee - ORL7**, 135 W Central Blvd., Suite 620, Orlando, Florida 32801; **David N. Glassman, Esquire,** David N. Glassman, P.A., 112 Annie Street Orlando, Florida 32806; **Christopher T. Hill, Esquire** and **Steven R. Main, Esquire**, Hill, Rugh, Keller & Main, P.L., 290 N. Orange Avenue, Suite 1610, Orlando, Florida 32802-2311; and **Scott D. Newsom, Esquire**, Katzman, Garfinkel & Berger, 300 North Maitland Avenue, Maitland, Florida 32751.

/s/ John D. Goldsmith
Attorney